# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MAINE

Samuel Hooker

    v.                                                     Civil No. 17-cv-345-JNL

United States of America

## O R D E R

In this case, plaintiff Samuel Hooker asserts claims under the Federal Tort Claims Act ("FTCA") against the United States of America. Before the court is the defendant's motion to dismiss (Doc. No. 48), filed pursuant to Fed. R. Civ. P 12(b)(1), seeking dismissal of Hooker's claims on the basis that this court lacks subject-matter jurisdiction over this matter. The plaintiff filed an objection (Doc. No. 72), the defendant filed a reply (Doc. Nos. 75, 76) to the objection, and the plaintiff filed a surreply (Doc. No. 83).[1]

### Motion to Dismiss Standard

"[A] party seeking to invoke the jurisdiction of a federal court must bear the burden of demonstrating the existence of such jurisdiction." Gordo-González, 873 F.3d 32, 35 (1st Cir.

---

[1] Although Hooker filed this action pro se, the court appointed counsel to represent him for the limited purpose of responding to the motion to dismiss addressed in this Order. See Feb. 26, 2019 Order (Doc. No. 55); June 4, 2019 Order (Doc. No. 63).

1

2017).  When ruling on a motion to dismiss for lack of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), the court must "'construe the [c]omplaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences.'"  Hajdusek v. United States, 895 F.3d 146, 148 (1st Cir. 2018) (citation omitted).  Dismissal under Rule 12(b)(1) is appropriate when the facts alleged in the complaint, taken as true, "fail to bring the case within the court's subject-matter jurisdiction."  Gordo-González, 873 F.3d 35 (1st Cir. 2017).  That said, when the United States challenges claims brought under the FTCA with a Rule 12(b)(1) motion, the claim can survive "only if [the complaint] contains sufficient facts to demonstrate that the FTCA applies to the claims asserted and that none of the FTCA's manifold exceptions is apposite."  Id. at 36.

**Background**

At all times relevant to this matter, Hooker was a federal detainee housed in the Cumberland County Jail ("CCJ") in Maine. Because Hooker is partially paralyzed, he is confined to a wheelchair.  On several occasions, United States Marshals

Service ("USMS") deputies transported Hooker, either to court or to an airport, in a USMS van that was not wheelchair accessible.[2]

At the time of the incidents giving rise to this suit, in-district prisoner movements, such as the ones at issue here, were subject to USMS Policy Directive ("PD") 9.21(E). That directive, in pertinent part, states:

> **5.** **Special Transportation Movements:**
>
> a. **Physically, Mentally, and/or Medically Impaired Arrestees:** USMS prisoner transportation procedures, including the use of restraining devices, will be followed when arresting a person believed to be impaired.
>
> 1) If special vehicles are needed to transport the impaired prisoner (i.e., to court productions, a medical appointment, or to meet JPATS),[3] an ambulance or suitably equipped vehicle will be utilized and funded from the Federal Prisoner Detention (FPD) appropriation . . . .
>
> . . .
>
> b. **Movement of Impaired Prisoners:** The following procedures apply to the transportation of physically, medically and/or mentally impaired prisoners (male, female, adult, or juvenile):

---

[2] At the time of the events underlying the claims in this action, the USMS did not own a wheelchair accessible van. In his complaint, Hooker asks the court to order the defendant to buy one.

[3] JPATS is the Justice Prisoner and Alien Transportation System, see Pl.'s Obj., Attach. 4 (Doc. No. 72-4), at 1, and is not relevant to Hooker's claims.

> 1) Obtain a written statement from the medical staff of the sending institution/facility. The statement will include:
>
>    a) The prisoner's physical and emotional state;
>
>    b) Special requirements for movement or safekeeping, such as isolation or special medication(s);
>
>    c) Recommendations concerning the use of additional restraining devices (USMS personnel will apply those restraining devices that are necessary to ensure the impaired person is transported in a safe and secure manner); and
>
>    d) Requirement for an attendant(s) to assist in the transportation and safekeeping.
>
> 2) Whenever possible, impaired prisoners will not be housed, transported, or comingled with other prisoners. Every effort should be made to place the impaired prisoner in a facility that will meet the specific medical needs of the prisoner. The holding institution will be informed of the prisoner's special condition.

USMS PD 9.21(e), Pl.'s Obj., Attach. 4 (Doc. No. 72-4), at 6-7.

Each time USMS deputies transported Hooker by van, they lifted him out of his wheelchair by his arms and legs and placed him on the floor of the rear compartment of the van rather than on a seat. After they loaded him into the van, they put his wheelchair in the rear compartment along with him. During one or more of his trips in a van: (1) Hooker complained about not

having a seatbelt, and deputies told him to hold onto his wheelchair; (2) deputies placed him on something metal that scraped him; (3) his wheelchair struck him in the head; (4) he suffered injuries to his head, neck, back, and shoulder; and (5) he experienced emotional distress.

Based upon the foregoing, Hooker initially filed multiple claims against multiple defendants. All that remain are negligence claims asserted under the FTCA arising from: (1) the USMS's failure to transport him in a wheelchair-accessible van; (2) the deputies' failure to secure him with a seatbelt; and (3) the manner in which deputies loaded him into the van.

**Discussion**

The United States moves to dismiss, asserting that, because Hooker's claims are based upon the USMS deputies' performance of discretionary functions, and district courts lack subject matter jurisdiction over such claims under the FTCA's discretionary function exception. In his objection to the motion to dismiss, the plaintiff concedes that his second and third theories of liability (concerning the deputies' failure to secure him with a seatbelt and the manner in which the deputies loaded him into the van), are barred by the FTCA's discretionary function exception. Hooker frames his remaining claim as follows: "This case now involves one issue: Did the transport of a handicapped

5

prisoner by the [USMS] require the use of a special vehicle such as an ambulance or suitably equipped vehicle or van?" Pl.'s Mem. of Law (Doc. No. 72-1), at 1.

I. The FTCA

The FTCA is "a limited waiver of sovereign immunity." Hajdusek, 895 F.3d at 149. It provides that

> the district courts . . . have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). As a waiver of sovereign immunity, "'[t]he FTCA must be 'construed strictly in favor of the federal government.'" Evans v. United States, 876 F.3d 375, 380 (1st Cir. 2017) (citation omitted), cert. denied, 139 S. Ct. 81 (2018).

> In addition, the FTCA's waiver of sovereign immunity is narrowed by exceptions. One such exception, commonly called the discretionary function exception, bars liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Id. (quoting 28 U.S.C. § 2680(a)). "In evaluating a claim under the FTCA, a court must . . . determine whether the claim is

based on a discretionary function as contemplated by section 2680; if so, the case must be dismissed for want of jurisdiction." Hadjusek, 895 F.3d at 149.

The court utilizes a two-step process for conducting the discretionary-function analysis:

> First, [the court] must identify the conduct that allegedly caused the harm. Second, [the court] must ask whether this conduct is of the nature and quality that Congress, in crafting the discretionary function exception, sought to shelter from tort liability. The latter analysis encompasses two questions: Is the conduct itself discretionary? If so, is the discretion susceptible to policy-related judgments? The word "susceptible" is critical here; [the court] do[es] not ask whether the alleged federal tortfeasor was in fact motivated by a policy concern, but only whether the decision in question was of the type that policy analysis could inform. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."

Hajdusek, 895 F.3d at 150 (quoting United States v. Gaubert, 499 U.S. 315, 325 (1991)) (other citations and internal quotation marks omitted); see also Gordo-González, 873 F.3d at 36 ("[S]ection 2680(a) will strip a court of jurisdiction only if the challenged conduct is both discretionary and policy-driven."). "[T]he burden [is] on the plaintiff to show that discretionary conduct was not policy-driven, and, hence, falls outside the [discretionary function] exception." Carroll v. United States, 661 F.3d 87, 100 n.15 (1st Cir. 2011).

7

II. The Conduct at Issue

In both his complaint and his memorandum of law, Hooker makes clear that "the specific conduct here is transporting a paraplegic on the floor of a van instead of providing a special vehicle or ambulance." Pl.'s Mem. of Law (Doc. No. 72-1) 13. Having identified the conduct that allegedly caused Hooker harm, the court must address whether that conduct was discretionary and, if so, whether the discretion the deputies exercised was susceptible to policy-related judgments.

III. Discretionary Conduct

"The conduct of federal employees is generally held to be discretionary unless 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" Evans, 876 F.3d at 381 (quoting Berkovitz ex rel. Berkovitz v. United States, 486 U.S. 531, 536 (1988)). The parties here agree that, to the extent there is any federal policy that prescribed a course of action that USMS deputies were obligated to follow when transporting disabled prisoners, that policy was set out in PD 9.21(E)(5). The parties disagree, however, as to both the proper interpretation of PD 9.21(E)(5) and its application to the circumstances of this case.

The defendant contends that PD 9.21(E)(5)(b), which includes the written statement requirement, is inapplicable here

8

because that provision applies only to inmate transports from one correctional facility to another, and Hooker does not allege that he was being transported to a correctional facility when he was injured.  Defendant also asserts that PD 9.21(E)(5)(a), which is applicable here, does not require the use of special vehicles to transport impaired prisoners, but only prescribes the procedure that must be followed in the event such a vehicle is needed, and that deciding whether a special vehicle is needed is left to the discretion of the deputies transporting a prisoner.

   Hooker argues that PD 9.21(E)(5)(b) "is a general provision applicable to all movements of impaired prisoners," Pl.'s Mem. of Law (Doc. No. 72-1) 11, and that PD 9.21(E)(5)(a) concerns more specific circumstances.  Hooker also contends that PD 9.21(E)(5)(b)(1) requires deputies transporting impaired prisoners to obtain a written statement from the medical staff at the prisoner's correctional facility, and that it is the sending facility's medical staff, and not the USMS, that has the discretion to determine how impaired prisoners are to be transported and, therefore, whether a special vehicle is required for a specific transport.  Hooker does not argue that PD 9.21(E)(5)(a)(1) itself required the USMS to use a special vehicle for his transport.  Hooker claims instead that: (1) PD 9.21(E)(5)(b)(1) required the USMS to request a written

9

statement from the CCJ medical staff; (2) that the written statement would have included a directive for the use of a special vehicle to transport Hooker; (3) the USMS would have then had a non-discretionary duty to follow the directive in the CCJ medial staff's written statement; and (4) Hooker's injuries resulted from the USMS deputies' failure to transport him in a special vehicle, which, had they obtained the medical staff's written statement as required by PD 9.21(E)(5)(b)(1), they would have been required to use. In other words, Hooker asks the court to find that the USMS's failure to obtain written statement from CCJ medical staff does not alleviate the USMS's obligation to follow the directives that such a statement would have contained, had it been obtained.

The language of PD 9.21(E)(5) is somewhat ambiguous, and the parties have not provided, and the court has been unable to locate, any judicial opinion that interprets it. The court can decide the issue before it, however, without resolving the parties' disagreement over the proper construction of PD 9.21(E)(5).[4]

---

[4] If it were necessary to construe PD 9.21(E)(5), the court would be inclined to determine that PD 9.21(E)(5)(a) applies to the transport of impaired prisoners who have been arrested but not yet placed in a correctional facility while PD 9.21(E)(5)(b) applies to the transport of prisoners who, at the time of transport, are being held in a correctional facility with a medical staff.

Assuming, as Hooker contends, that the deputies who transported him were obligated to follow PD 9.21(E)(5)(b), the non-discretionary duty that PD 9.21(E)(5)(b)(1) imposes on deputies performing transport duties is the obligation to obtain a written statement from a medical official at the correctional facility from which the inmate is being transported, not an obligation to use specific kinds of vehicles to transport prisoners with specific impairments. Contrary to the argument Hooker presses, it is not at all apparent that the USMS's compliance with PD 9.21(E)(5)(b) would have resulted in instructions from the CCJ medical staff that would have required the USMS to transport Hooker in a wheelchair accessible van.

PD 9.21(E)(5)(b)(1) mentions several "requirements" that may appear in a medical staff's written statement, but it neither directs medical officials at sending institutions to specify the kinds of vehicles that should be used to transport impaired prisoners, nor grants medical officials the authority to dictate the specific manner in which the USMS transports prisoners. Rather, PD 9.21(E)(5)(b) directs the USMS to collect information on impaired prisoners from medical personnel, which may include certain requirements or recommendations for

transport, for the USMS to use when deciding how, and in what vehicle, the inmate should be transported.[5]

In short, neither the complaint in this case, nor Hooker's objection to the defendant's motion to dismiss, identifies any federal statute, regulation, or policy that dictates the kind of vehicle the USMS deputies must use to transport an impaired prisoner. Accordingly, the USMS deputies had the discretion to select the vehicle used to transport Hooker. See Evans, 876 F.3d at 381. The court therefore turns to the question of whether the exercise of that discretion was subject to policy-related judgments.

IV. Policy-Related Judgments

"'Because the law presumes that the exercise of official discretion implicates policy judgments,' [Hooker] bears the burden of demonstrating that the discretion exercised by [the USMS and/or its deputies] was not susceptible to policy analysis." Id. at 383 (citation omitted). As noted above, the question is not "whether the alleged federal tortfeasor was in

---

[5] The defendant suggests that the audience for the written report from the sending institution is the medical staff at a receiving institution, not the USMS, but PD 9.21(E)(5)(b)(1) refers to USMS personnel and to prisoner transport, which is the responsibility of the USMS. Moreover, PD 9.21(E)(5)(b)(2) identifies a Form USM-130, not the written statement from the sending institution's medical staff, as the vehicle by which a receiving institution is informed of an incoming prisoner's medical condition.

12

fact motivated by a policy concern, but only whether the decision in question was of the type that policy analysis could inform." Hajdusek, 895 F.3d at 150; see also Gaubert, 499 U.S. at 325.

"The discretionary function exception protects only those discretionary choices that are 'grounded in social, economic, and political policy.'" Evans, 876 F.3d at 383 (citation omitted). When addressing the policy judgment component of the discretionary function analysis, "the question is whether plaintiff [has] rebutted the presumption that the government's exercise of discretion was 'policy-driven — that is, . . . fueled by variables about which reasonable persons can differ.'" Valdez v. United States, 657 F. App'x 3, 5 (1st Cir. 2016) (citations omitted).

The policy judgment aspect of the discretionary function analysis "requires a case-by-case approach." Hajdusek, 895 F.3d at 150. It also "requires a determination of where the activity [at issue] falls on the spectrum from non-policy activities (such as driving a car) to policy-related ones (such as drafting regulations)." Tobar v. United States, 731 F.3d 938, 945 (9th Cir. 2013).

In this case, if Hooker were claiming that he was injured as a result of the USMS's decision not to include a wheelchair-accessible van in its fleet of vehicles, that activity is

13

plainly policy related, and therefore would be covered by the discretionary-function exception. Cf. Stockberger v. United States, 225 F. Supp. 2d 949, 958 (S.D. Ind. 2002), aff'd, 332 F.3d 479 (7th Cir. 2003) (finding that, with regard to enacting a policy to transport ill Bureau of Prisons ("BOP") employees, "the following policy considerations might be considered: whether or not current BOP vehicles would be sufficient to meet the need; how to finance the purchase of new vehicles if necessary; and who would drive the vehicles," and that "enacting a program would involve a balancing of safety and economic concerns, and this is the type of decision protected by 28 U.S.C. § 2680(a)."). If, on the other hand, Hooker were claiming that he was injured because the driver of a van in which he was being transported was operating the van in a negligent or reckless manner, it seems clear that that conduct is not policy related and would not be covered by the discretionary function exception. Cf. Estabrook v. United States, No. 16-CV-11772-ADB, 2018 U.S. Dist. LEXIS 210819, at *10, 2018 WL 6592092, at *4 (D. Mass. Dec. 13, 2018) ("'If one of the [federal] officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply,' because the discretion required by driving would not have been 'grounded in regulatory policy.'" (quoting Gaubert,

14

499 U.S. at 325 n.7)); see also, e.g., Dobrowski v. United States, No. 2:11-cv-02835 JAM-CKD, 2013 U.S. Dist. LEXIS 160382, at *8, 2013 WL 5954901, at *3 (E.D. Cal. Nov. 7, 2013) (denying motion to dismiss, on discretionary-function grounds, FTCA negligence claim based upon improper "selection of a gear before stepping on the gas [while driving a USMS van] and backing up without care"); Vinzant v. United States, No. 2:06-CV-10561, 2010 U.S. Dist. LEXIS 143672, at *3, *16, 2010 WL 1857277, at *1, *6 (E.D. La. May 7, 2010), aff'd 458 F. App'x 329, 329 (5th Cir. 2012) (ruling that plaintiff stated viable FTCA negligence claim by alleging that he was injured when marshals driving prisoner transport van "were speeding and carelessly weaving through traffic, despite the dangerous weather conditions").

As to the relevant conduct in this case, failing to use a special vehicle to transport him, Hooker argues that "the decision to transport [him] on the floor of the van – and not in a suitably equipped vehicle or ambulance – is not a decision susceptible to policy-related judgments," Pl.'s Mem. of Law (Doc. No. 72-1), at 13, and characterizes that decision as "'a mundane, administrative, garden-variety, housekeeping problem that [was] about as far removed from the policies applicable to the [USMS's] mission as it is possible to get,'" id. at 14

15

(quoting Gotha v. United States, 115 F.3d 176, 181 (3d Cir. 1997)).[6]

Courts have routinely held that decisions about how to transport prisoners in vehicles involve policy-related judgments. See, e.g., Vinzant v. United States, 458 F. App'x 328, 333 (7th Cir. 2012) (per curiam) (holding that deciding whether to use a seatbelt to secure a prisoner being transported in a van involves policy-related judgments); Menolascina v. United States, No. 12 C 90, 2013 U.S. Dist. LEXIS, at *7-*8, 2013 WL 707920, at *2 (N.D. Ill. Feb. 26, 2013) ("the procedures used to transport prisoners clearly relate to considerations of public policy"); Crane v. United States, No. 3:10-68-AC, 2011 U.S. Dist. LEXIS 153120, at *18, 2011 WL 7277317, at *7 (D. Or. Nov. 29, 2011) (ruling that choices made by deputies concerning whether to assist prisoners getting off van "are the kind of policy-based decisions that the [discretionary function exception] is intended to shield"). In particular, the First

---

[6]In support of that argument, Hooker points out the provision in PD 9.21(E)(5)(a) that identifies a source of funding for special vehicles when they are needed to transport impaired prisoners. In Hooker's view, the availability of that source of funding takes cost off the table as a policy concern informing decisions about whether to use special vehicles to transport impaired prisoners. But, as previously stated, see supra note 4, it is not clear that PD 9.21(E)(5)(a)(1) applies, and even if it does, the mere fact that it identifies a source of funds does not mean that decisions concerning the use of those funds do not implicate policy concerns.

16

Circuit recently held, in Hadjusek, that the discretionary function exception applied to discretionary conduct by a relatively low-level federal officer, when that conduct required the officer to weigh competing policy goals. See Hadjusek, 895 F.3d at 151 (applying the discretionary function exception to conduct of Marine drill sergeant's decision to require a Marine recruit to engage in more-than-normal strenuous exercise for a longer-than-normal period, which resulted in permanent disability to the recruit, because determining how hard and for how long "a potential Marine should exercise . . . calls for weighing the policy goals that are furthered by strenuous, even exhaustive exercise against he goals of avoiding attrition through injury or otherwise.").

Here, determining what kind of vehicle should be used to transport a particular prisoner, and how to use that vehicle to do so, calls for weighing the policy goals, such as financial economy, logistical efficiency, and staffing simplicity, that are furthered by using a regular vehicle to transport a prisoner who uses a wheelchair, against the policy goal of providing the ideal mode of transportation for each prisoner. The USMS deputies' conduct in transporting Hooker in a van that was not wheelchair accessible, therefore, constituted policy-based discretionary action. Accordingly, the discretionary function exception, 28 U.S.C. § 2860(a), precludes this court from

17

exercising subject-matter jurisdiction over Hooker's FTCA claim alleging that USMS deputies were negligent in failing to transport Hooker in a wheelchair accessible vehicle.

That said, the court also acknowledges that Hooker's claims are sympathetic. The court's sympathy for Hooker, however, cannot overcome its lack of subject matter jurisdiction over his claims.

**Conclusion**

For the foregoing reasons, the defendant's motion to dismiss (Doc. No. 48) for lack of subject matter jurisdiction is GRANTED. Hooker's three claims, as set forth in this Order, are thus dismissed. The dismissal of Hooker's claims is without prejudice to Hooker's ability to file an amended complaint, within thirty days of the date of this Order, that asserts: (1) a claim that he was injured as a result of the deputies' failure to comply with PD 9.21(E)(5)(b)(1); and/or (2) a claim asserting that his injuries resulted from the USMS deputies' violation of any implicit or explicit policy, directive, rule, or regulation which requires that USMS employees comply with state laws, including state motor vehicle and traffic laws.[7]

---

[7] For example, Maine state law generally requires that "a person 18 years of age or older [who] is a passenger in a vehicle that is required by the United States Department of Transportation to be equipped with seat belts, the passenger must be properly secured in a seatbelt," 29-A M.R.S.A. §

18

Finally, the court appreciates Attorney Wilbur Glahn's service as a court-appointed advocate int his case, which may conclude with this Order.  Should Attorney Glahn wish to continue with his representation of Hooker in this matter in light of the paragraph above the court asks that he notify the Deputy Clerk.  If not, his appointment will be terminated.

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Joseph N. Laplante
　　　　　　　　　　　　　　　　　　United States District Judge

September 27, 2019

cc:　Samuel Hooker, pro se
　　　Wilbur A. Glahn III, Esq.
　　　James D. Concannon, Esq.

---

2081(3-A), although medical exemptions to that rule may be obtained if documented by a physician, see id. at § 2081(4-A). The court in this Order grants Hooker leave to amend his complaint to assert, if he can, that the USMS deputies violated the Maine seatbelt law, or any other state or federal law, and that such violation, whether or not it was specifically referenced in any policy, directive, regulation or rule, would remove the deputies' actions from the protection of the discretionary function exception. Cf., e.g., Stout v. United States, 721 F. App'x 462, 470 (6th Cir. 2018) (holding that "to the extent that the United States had a duty grounded in agency directives or state law, the discretionary function exception does not apply to such duty"); cf. also Montijo-Reyes v. United States, 436 F.3d 19, 25 n.8 (1st Cir. 2006) (declining to decide whether state law can be the source of a mandatory duty so as to defeat the discretionary function exception to an FTCA claim).