UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

Samuel Hooker

    v.                              Case No. 17-cv-345-JNL

United States of America

**REPORT AND RECOMMENDATION**

Plaintiff Samuel Hooker brings a claim under the Federal Tort Claims Act ("FTCA"), alleging that the United States Marshals Service ("USMS") was negligent in transporting him from the Cumberland County Jail in Maine to the United States District Court for the District of Maine and, in a second trip, from the jail to the airport.[1]  See Second Amended Complaint, doc. no. 90.  Hooker alleges that the USMS deputies who transported him failed to follow USMS policy directive, PD 9.21(E)(5)(b).  The United States moves to dismiss the claim for lack of subject matter jurisdiction (doc. no. 126), under Federal Rule of Civil Procedure 12(b)(1), based on the discretionary function exception to the waiver of sovereign immunity under the FTCA.  Hooker objects (doc. no. 127), and the United States has filed a reply (doc. no. 130).

---

[1] Although Hooker filed his initial complaint pro se, counsel is now representing him.  See Doc. no. 55; Doc. no. 63; Doc. no. 109; Doc. nos. 112 & 113.

I. <u>Legal Framework</u>

"As a sovereign, the United States is immune from suit without its consent." <u>Evans v. United States</u>, 876 F.3d 375, 380 (1st Cir. 2017). For that reason, courts lack subject matter jurisdiction over claims against the United States unless sovereign immunity is waived. <u>Davallou v. United States</u>, --- F.3d ---, 2021 WL 2102930, at *1 (1st Cir. May 25, 2021). "The FTCA 'waives the [federal] government's sovereign immunity for certain torts committed by its employees in the scope of their employment.'" <u>Id.</u> (quoting <u>Mahon v. United States</u>, 742 F.3d 11, 12 (1st Cir. 2014)).

The waiver of sovereign immunity under the FTCA "does not extend to claims based upon a government employee's exercise or failure to exercise a 'discretionary function.'" <u>Id.</u>; 28 U.S.C. § 2680(a). Therefore, if a claim falls into the discretionary function exception to the waiver of sovereign immunity under the FTCA, it must be dismissed for a lack of subject matter jurisdiction. <u>Davallou</u>, 2021 WL 2102930, at *1.

Whether the discretionary function exception applies is determined through several analytic steps in which the court first determines what conduct allegedly caused harm and then whether that conduct is both "discretionary" and "susceptible to policy analysis." <u>Id.</u> at *2. Conduct is not discretionary when

2

it is mandated by a federal statute, regulation, or policy. § 2680(a); United States v. Gaubert, 499 U.S. 315, 322 (1991).

II.  Standard of Review

The party who has invoked the jurisdiction of the court bears the burden of showing that subject matter jurisdiction exists.  Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).  The First Circuit has recognized different standards for assessing a motion to dismiss under Rule 12(b)(1), depending on whether the jurisdictional facts alleged in the complaint are disputed.  Torres-Negron v. J&N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007); accord Spencer v. Doran, 2021 WL 294556, at *2 (D.N.H. Jan. 28, 2021).  When the motion to dismiss is based on jurisdictional facts as alleged in the complaint, the court applies the same standard that is used under Federal Rule of Civil Procedure 12(b)(6), taking properly-alleged facts as true and resolving reasonable inferences in the plaintiff's favor.  Davallou v. United States, --- F.3d ---, 2021 WL 2102930, at *1 (1st Cir. May 25, 2021); Hajdusek v. United States, 895 F.3d 146, 148 (1st Cir. 2018); McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006).  In that circumstance, the court must decide whether the alleged facts are sufficient to support subject matter jurisdiction.

3

Hajdusek, 895 F.3d at 148.

When the jurisdictional facts are disputed, however, different standards apply.  Torres-Negron, 504 F.3d at 163.  If the factual dispute is intertwined with the merits of the case, the court employs the standard used in addressing motions for summary judgment.  Id.  On the other hand, if the jurisdictional facts are separate from the merits of the case, the court weighs the evidence to determine whether jurisdiction exists.  Id.  If necessary, the court may order discovery, consider extrinsic evidence, or hold evidentiary hearings.  Pajak v. Rohm & Haas Co., 387 F. Supp. 3d 138, 146 (D. Mass. 2019).

In this case, the jurisdictional issue is the discretionary function exception to the waiver of sovereign immunity in the FTCA.  Hooker alleges that a USMS policy directive, PD 9.21(E)(5)(b), applies to the transport incidents at issue in this case, which he contends bars the discretionary function exception.[2]  The defendant has submitted the declarations of USMS Senior Inspector Jared McCloe and Chief Inspector of Detention Operations at the USMS Heather Lowry.  The plaintiff contends that the defendant has raised a factual issue based on the declarations, stating that the declarations "challenge[] the

---

[2] There is no dispute for purposes of this case that PD 9.21(E)(5)(b) is a regulation within the meaning of § 2680(a).

factual allegation that PD 9.21(E)(5)(b) applied to the conduct in this case." Doc. 127, at *10.

Hooker relies on Campbell v. United States, 167 F. Supp. 2d 440 (D. Mass. 2001), to support his argument that the United States has raised a factual issue which requires discovery. Campbell, however, pertains to discovery when an issue arises as to whether regulations exist that would preclude the discretionary function exception. Id. at 448. In this case, however, Hooker has identified the policy directive, PD 9.21(E)(5)(b), that he contends applies to the circumstances alleged. Therefore, as there is no need for discovery to find a potentially applicable regulation or policy directive, Campbell is inapplicable.

Here, the parties dispute the meaning of PD 9.21(E)(5)(b) in the context of undisputed circumstances. In contrast, a factual issue would arise if the parties disputed "the conduct in this case." The declarations submitted by the United States provide the declarants' opinions about the meaning of PD 9.21(E)(5)(b), but the declarants do not challenge any of the factual allegations provided in the complaint.[3] For that reason,

---

[3] The two challenged declarations were filed by the United States in support of a prior motion to dismiss (doc. no. 48; declarations, doc. nos. 46 [McCloe] & 75 [Lowry]). The United States references the opinions of McCloe and Lowry in its

the Rule 12(b)(6) standard applies.[4]

III. Background

The United States moved to dismiss Hooker's prior complaint (document no. 49) for lack of subject matter jurisdiction on the same ground that is raised in the current motion, that sovereign immunity barred the claim under the discretionary function exception to the waiver in the FTCA. Doc. 48. In the then-operative complaint, Hooker alleged that the challenged conduct by the USMS deputies was "transporting a paraplegic on the floor of a van instead of providing a special vehicle or ambulance." Doc. no. 84 at *8. The parties agreed that the only potentially relevant policy, for purposes of the discretionary function issue, was PD 9.21(E)(5)(b), but they disagreed as to whether it applied to the transportation incidents involving Hooker.

The court concluded that the language of PD 9.21(E)(5)(b) was somewhat ambiguous but decided that even if that PD applied, it did not require the USMS to use special vehicles for transporting prisoners with impairments. For that reason, the

---

current motion to dismiss for purposes of "Skidmore deference" as to the meaning of PD 9.21(E)(5)(b). The United States does not cite the declarations to challenge any of the factual allegations in the complaint.

[4] Hooker's argument that discovery is required does not apply in the context of the Rule 12(b)(6) standard.

USMS deputies who transported Hooker had the discretion to select the vehicle. The court also concluded that the exercise of that discretion was subject to a policy judgment and, therefore, was a policy-based discretionary judgment. The court dismissed the complaint without prejudice to Hooker to file a complaint that either alleged that his injuries resulted from the USMS deputies' failure to comply with PD 9.21(E)(5)(b)(1) or that his injuries resulted from the USMS deputies' violation of another policy, directive, rule, or regulation that required compliance with state laws.

Hooker filed the current complaint in response.[5] Doc. no. 90. He alleges that during the events at issue he was being held at the Cumberland County Jail in Portland, Maine. He is a paraplegic and also has limited use of one arm. He has been confined to a wheelchair for many years. Hooker alleges that the USMS in Maine did not safely transport him on two occasions: once from the jail to the federal court in Portland and another time from the jail to the airport in Portland.

Hooker alleges that on August 8, 2012, two USMS deputies arrived at the jail to transport him to the court in a van used

---

[5] Both the prior complaint, document no. 49, and the current complaint (document no. 90) were docketed as "Second Amended Complaint."

7

for transport of prisoners.  Before arriving, the deputies did not know about his medical condition that caused him to be limited to a wheelchair and did not have a suitably equipped vehicle for his transportation.  Once at the jail, the deputies decided to remove him from the wheelchair and to put him on the floor of the van.

Hooker states in the complaint that facts about the transport were provided in "affidavits filed by marshals of the USMS-M in this matter."[6]  Doc. 90, ¶ 10.  Hooker alleges that the deputies had never transported a wheelchair-bound prisoner in a suitably equipped van.  He alleges that at the time of the trip, he was six feet three inches tall and weighed 230 pounds.  Hooker alleges that the marshals lifted him out of his wheelchair on put him on the floor of the rear compartment of the van.  They then dragged him across the floor to the back area and also placed his wheelchair in that area.  The deputies were unable to lift Hooker onto a seat, so they propped him

---

[6] The affidavits were not filed with the complaint, and no citation to the record where the affidavits might be found is provided.  It appears that Hooker is relying on the affidavit of Dean Knightly, who is the Supervising Deputy United States Marshal for the District of Maine.  His original affidavit was filed on August 16, 2018.  Doc. no. 47. Knightly then filed an affidavit on February 10, 2020, (document no. 99) and a corrected affidavit the same day (document no. 100), which were filed after the second amended complaint.

against a wall of the van where he could hold onto a seat. They then transported him to the court. He alleges that during the ride he was bounced and bumped on the floor of the van, which caused injuries to his buttocks, back, neck, and shoulder.

A second trip occurred on August 12, 2017, between the jail and the court. This time the USMS in Maine was aware of Hooker's condition and arranged to transport him a car. He was lifted into the back seat where he was able to lie down, and he was not injured during that transport.

A third trip occurred on January 28, 2013, from the jail to Portland International Airport, because Hooker was being transferred to a federal prison in Butner, North Carolina. Once again, Hooker was transported on the floor of a van, as had been done on August 8. Hooker alleges that the marshals did not contact personnel at that jail before the transfer to obtain information about his medical condition or special needs. When he was met at the airport in North Carolina, however, employees of the Bureau of Prisons transported him in a handicap-accessible van.

Hooker brings a claim of negligence under the FTCA. In support, he alleges that the USMS owed him "a duty to plan for his transport and to transport him in a manner that was safe and did not subject him to harm." Doc. 90, ¶ 21. He further

9

alleges that under the USMS Policy Directives, PD 9.21(E)(5)(b)(1), the USMS "had a duty to obtain advice from medical professionals and to obtain a written statement from the medical staff of the [jail] prior to any transfer." Id., ¶ 22. He contends that the USMS breached its duty under PD 9.21(e)(5)(b) by failing to obtain a written statement, resulting in his transfer "in a manner that caused his significant personal injury." Id. at ¶ 24.

Policy Directive 9.21 is titled "IN-DISTRICT PRISONER MOVEMENTS." Doc. 72-4. The stated purpose of the directive is to establish policy and procedures for moving prisoners by the USMS "either within a district or up to 50 miles in a bordering district." PD 9.21(B). Part E provides "Procedures," and Subpart 5 pertains to "Special Transportation Movements." Section b provides procedures for "the transportation of physically, medically, and/or mentally impaired prisoners (male, female, adult, or juvenile)." PD 9.21(E)(5)(b)(1) provides as follows:

> 1)   Obtain a written statement from the medical staff of the sending institution/facility. The statement will include:
>
> a)   The prisoner's physical and emotional state;
>
> b)   Special requirements for movement or safekeeping, such as isolation or special medication(s);

      c)    Recommendations concerning the use of additional restraining devices (USMS personnel will apply those restraining devices that are necessary to ensure the impaired person is transported in a safe and secure manner); and

      d)    Requirement for an attendant(s) to assist in the transportation and safekeeping.

Doc. 72-4.  Subpart (b)(2) addresses comingling of prisoners, which is not at issue in this case.

## IV. Discussion

The United States moves to dismiss on the ground that Hooker's claim is barred by sovereign immunity based on the discretionary function exception to the waiver provided in the FTCA.  Hooker contends that the claim is not barred by the discretionary function exception because PD 9.21(E)(5)(b) governs the USMS deputies' conduct at issue here.  The United States argues that PD 9.21(E)(5)(b) does not apply to the transports at issue in this case.  It further argues that, even if it did apply, failure to comply did not cause the harm alleged and the decision of what vehicle to use was both discretionary and subject to a policy judgment.

To recap, whether the discretionary function exception applies in a particular situation depends on analysis conducted in several steps.  First, the court must identify the conduct

11

that is alleged to have caused the harm.  <u>Davallou</u>, 2021 WL 2102930, at *2.  Next, the court must determine whether the alleged conduct was discretionary.  <u>Id.</u>  If the conduct was discretionary, the court continues on to decide whether the conduct was susceptible to a policy analysis.  <u>Id.</u>

   A.   <u>Conduct Alleged to Have Caused Harm</u>

In his current complaint and in opposition to the motion to dismiss, Hooker alleges that his injuries were caused by the USMS's failure to comply with PD 9.21(E)(5)(b)(1). Specifically, he contends that the USMS was required to consult medical professions and to obtain and comply with a written statement from medical staff at the jail before transporting him.  He further contends that because the USMS failed to comply with the written statement requirement, he was transported in an unsafe manner on two occasions that caused injuries.

   B.   <u>Discretionary</u>

Hooker contends that the duty to get a written statement was not discretionary because it was required by PD 9.21(E)(5)(b)(1).  The United States contends that PD 9.21(E)(5)(b)(1) does not apply to the transports at issue in this case.  As the court held previously, the policy directive

12

is somewhat ambiguous with respect to the circumstances in this case. Doc. 84, at *10. And, once again, it is not necessary to resolve the parties' disagreement over the proper construction of PD 9.21(E)(5)(b)(1).

In the prior complaint, Hooker alleged that he was harmed by the USMS deputies' decision to transport him on the floor of a van instead of providing a special vehicle or ambulance. He alleged that the USMS deputies violated PD 9.21(E)(5)(b)(1) by failing to get a written statement from the medical staff at the jail. The court concluded that the USMS retained the discretion to choose what vehicle to use to transport Hooker, even if PD 9.21(E)(5)(b)(1) applied, and that the vehicle decision was a policy-related judgment, making the discretionary function exception applicable so that sovereign immunity barred the claim.

The court held that PD 9.21(E)(5)(b)(1) imposes the duty "to obtain a written statement from a medical official at the correctional facility from which the inmate is being transported." Doc. 85, at *11. The policy directive does not require the use of specific kinds of vehicles. Id. The policy directive also "neither directs medical officials at sending institutions to specify the kinds of vehicles that should be used to transport impaired prisoners, no grants medical

13

officials the authority to dictate the specific manner in which the USMS transports prisoners." Id. Instead, the policy directive requires the USMS to collect information that will be used in the discretionary decision about what vehicle to use for transporting a prisoner with an impairment. Id.

Although Hooker now alleges that the challenged conduct is the failure to obtain a written statement and to follow its requirements, the new allegation does not change the result. Hooker contends that if a statement has been requested, the medical staff would have articulated a safe means for his transport. He also argues that the USMS was obligated to abide by the recommendations of the medical staff as to a safe method of transport.

As the court previously held, the written statement requirement obligates the USMS to collect information to use in the discretionary decision about how it will transport a prisoner with an impairment. Contrary to Hooker's argument, however, the written statement requirement does not obligate the USMS to comply with any recommendation made by the medical staff. For that reason, failure to comply with the written statement requirement does not change the discretionary nature of the decision-making process as to how the transport would be conducted.

14

Therefore, the claim as alleged in the second amended complaint (document no. 90) challenges the discretionary function of the USMS as to how it will transport prisoners with impairments.

C. Policy-Related Judgments

The court addressed the policy judgment aspect of the discretionary function analysis in the prior order.  Doc. no. 84, at *12-18.  There is no need to repeat that analysis here. Hooker has not carried his burden to show that the discretion exercised by the USMS in not policy related.

V. Result

Hooker bears the burden of showing that subject matter jurisdiction exists and that the discretionary judgment function does not apply here.  Because he has not done that, sovereign immunity precludes the subject matter jurisdiction of this court over Hooker's FTCA claim.[7]

---

[7] Nevertheless, as this court has stated previously, the circumstances Hooker alleges are sympathetic and troubling.  The allegations raise concern about the transport policies and practices of the USMS-Maine, in particular for those who suffer with physical impairments.  Presumably, the USMS has taken steps to rectify the conditions that pertained when Hooker was transported by the USMS in Maine.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that the court grant the motion of the United States to dismiss the second amended complaint for lack of subject matter jurisdiction (document no. 126).

_____
Andrea K. Johnstone
United States Magistrate Judge

June 7, 2021

cc:  Counsel of Record